UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


GILBERT M. GOLDMAN, JR.                    CIVIL ACTION

VERSUS                                     NO: 05-1835
                                           (c/w 05-2121)

HARTFORD LIFE AND ACCIDENT                 SECTION "R" (5)
INSURANCE COMPANY, ET AL.


<u>**ORDER AND REASONS**</u>

Before the Court are (i) defendant Halliburton Energy
Services, Inc.'s motion to dismiss, or, in the alternative, for
summary judgment; and (ii) plaintiff Gilbert Goldman's motion for
summary judgment.  For the following reasons, the Court GRANTS
Halliburton's motion to dismiss and DENIES Goldman's motion for
summary judgment.


**I.   BACKGROUND**

Plaintiff Gilbert Goldman is a former employee of Baroid
Drilling Fluids, a division of defendant Halliburton Energy
Services, Inc.  On March 23, 2001, Goldman was injured while he
worked as a mud engineer on an offshore drilling rig.  Goldman

has filed several lawsuits related to this incident.  In this action, Goldman asserts a claim against Halliburton under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, based on allegations that Halliburton has taken conflicting positions at various times concerning Goldman's status, that is, whether Goldman is a Jones Act seaman, whether he is covered by the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et seq.*, or whether he is covered by the Louisiana state workers' compensation law.

Specifically, Goldman alleges that on March 26, 2001, three days after he was injured, Halliburton prepared an "Employers First Report of Injury or Occupational Illness" on Department of Labor Form LS-202, in which Halliburton reported Goldman's injury under the LHWCA.  Thereafter, ACE American Insurance Company, a subsidiary of Pacific Employers Insurance Company, Halliburton's longshoremen and workers' compensation carrier, began to pay Goldman LHWCA benefits at a rate of $933 per week.

Goldman then filed a suit concerning the accident against several drilling companies, including R & B Falcon Drilling USA, Inc., in Louisiana state court.  On August 23, 2001, Halliburton and Pacific intervened in that action and asserted that they were entitled to reimbursement and indemnity under the Louisiana state workers' compensation statute.  During this time, ACE and/or Pacific also allegedly paid Goldman's medical expenses under

2

reduced fee schedules applicable only to claims under the
Louisiana state workers' compensation regime.

R & B Falcon Drilling later filed a related limitation of
liability proceeding in federal court in this district.  On
December 6, 2002, Pacific intervened in that action and asserted
that, as Halliburton's longshore and harbor workers' compensation
carrier, it was entitled to reimbursement and indemnity under
state and federal compensation statutes for benefits paid to
Goldman.

Pacific allegedly terminated Goldman's LHWCA benefits in
December 2002.[1]  Goldman thereafter filed a claim with the
Department of Labor against Halliburton and ACE seeking
resumption of his LHWCA benefits.  In proceedings before an
Administrative Law Judge on this claim, Halliburton asserted both
that Goldman was a Jones Act seaman, and thus not entitled to
LHWCA benefits, and that it had always taken the position that
Goldman was a Jones Act seaman.  Goldman alleges that the ALJ
denied his claim for resumption of LHWCA benefits because of
Halliburton's assertion that he was a Jones Act seaman.

Goldman filed this action in Louisiana state court on May

---

[1]Goldman alleges that he reached maximum medical cure in
December 2002.  Were Goldman considered a Jones Act seaman,
therefore, Halliburton's obligation to pay maintenance and cure
benefits would have ceased at that time.

12, 2005 against Halliburton, Pacific, ACE and Jerry Dietrick, an employee of a Pacific and/or an ACE subsidiary.  The defendants removed the case to this Court, and Goldman later dismissed his claims against Pacific, ACE and Dietrick.  Goldman asserts that Halliburton took inconsistent positions concerning Goldman's status in order to save money, and that Halliburton's change of position caused him to lose his LHWCA benefits.  Goldman alleges that these actions constitute mail fraud and entitle him to treble damages under RICO.  Goldman also asserts that Halliburton should be estopped from arguing that he is a Jones Act seaman.

Halliburton now moves to dismiss Goldman's complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment.  Goldman cross-moves for summary judgment on his estoppel argument.

## II.  HALLIBURTON'S MOTION TO DISMISS

### A.   Legal Standard

On a motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view those facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court must resolve all doubts as to the sufficiency

4

of the claim in the plaintiff's favor.  *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  The claim should be dismissed only if it clearly appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  *Id.; Pitotrowsji v City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995).

Notwithstanding the liberal pleading requirements of Federal Rule of Civil Procedure 8(a), to withstand a motion to dismiss, a civil RICO plaintiff must allege facts sufficient to establish each of the essential elements of his RICO claim.  *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998); *see also Fuller v. Harrah's Entm't, Inc.*, No. Civ.A. 04-2108, 2004 WL 2452771, at *2 (E.D. La. Oct. 29, 2004) ("At a bare minimum, a civil RICO complaint must state facts sufficient to demonstrate (1) specific instances of racketeering activity within the reach of the RICO statute; and (2) a causal nexus between that activity and the harm alleged.").  As the Fifth Circuit has stated, however, this formulation of the RICO pleading requirements is "deceptively simple," because each of RICO's essential elements is itself "a term of art which carries its own inherent requirements of particularity."  *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  Moreover, when the plaintiff bases his allegations of racketeering activity upon predicate acts of

fraud, he must plead those predicate acts with particularity in accordance with Rule 9(b).  *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (Rule 9(b) applies to "RICO claims resting on allegations of fraud."); *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (Rule 9(b)'s "particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim.").  The Court considers Halliburton's motion to dismiss against these background principles.

**B.   Discussion**

Goldman asserts that Halliburton violated one section of the RICO statute, 18 U.S.C. § 1962(b),[2] which states essentially that "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity." *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).  Although each subsection of section 1962 contains its own unique elements, they all require that a plaintiff satisfy the three common elements of identifying

_____

[2]In his belatedly-filed RICO case statement, Goldman specifically states that his claim arises under section 1962(b). Halliburton correctly notes, however, that Goldman also responded to portions of the Court's RICO standing order that pertain only to claims under sections 1962(a) or (c).  Notwithstanding this ambiguity, the Court considers only the stated basis for Goldman's claims, section 1962(b).

"'(1) a *person* who engages in (2) a *pattern of racketeering activity*, (3) connected to the acquisition, establishment, conduct, or control of an *enterprise.*'"  *Thompson v. MasterCard Int'l Inc. (In re MasterCard Int'l Inc. Internet Gambling Litig.)*, 313 F.3d 257, 261 (5th Cir. 2002) (quoting *Crowe*, 43 F.3d at 204).

　　1.　A "*Person*"

　　Halliburton does not dispute that it falls within the RICO statute's broad definition of a "person," which is "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).  It nevertheless argues, citing *Crowe*, that it is not a RICO person because it has not engaged in a pattern of racketeering activity.  In *Crowe*, the Fifth Circuit stated that the RICO "person" is "one that either poses or has posed a continuous threat of engaging in acts of racketeering."  *Crowe*, 43 F.3d at 204 (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)).  This "continuous threat" requirement is usually satisfied by showing the "pattern of racketeering activity" required at the next step of the analysis.  *Delta Truck*, 855 F.2d at 242.  Indeed, later Fifth Circuit cases have simply merged the two inquiries and incorporated the continuous threat requirement

7

as an element of establishing a pattern of racketeering activity. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000) ("A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity."). As it would be superfluous to consider the "continuous threat" element both to determine whether the defendant is a RICO person and to determine whether the plaintiff has alleged a pattern of racketeering activity, the Court finds that it is appropriate to consider that element only in connection with the latter inquiry. Accordingly, the Court finds that Goldman has sufficiently alleged that Halliburton is a person under RICO. The Court will next consider whether Goldman has sufficiently alleged that Halliburton engaged in a pattern of racketeering activity.

> 2. *Pattern of Racketeering Activity*
>
>> a. *Predicate Acts*

To allege a pattern of racketeering activity, a plaintiff must first show that the defendant committed two or more predicate acts of racketeering. *See id.* The types of conduct that can serve as predicate acts are described in section 1961(1) and can include either state or federal crimes. *MasterCard*, 313

F.3d at 262.  In this case, Goldman asserts that Halliburton
committed the predicate act of mail fraud because it transmitted
documents containing false representations as to Goldman's status
through the mails.  To establish the predicate act of mail fraud,
a plaintiff must allege:

> (1)  A scheme or artifice to defraud or to
> obtain money or property by false or
> fraudulent pretenses, representations or
> promises.
>
> (2)  Interstate or intrastate use of the
> mails for the purposes of furthering or
> executing the scheme or artifice to defraud.
>
> (3)  The use of the mails by the defendant
> connected with the scheme [or] artifice to
> defraud.
>
> (4) Actual injury to the business or property
> of the plaintiff.

*Reuther v. Smith*, No. Civ.A. 01-3625, 2003 WL 1955167, at *6
(E.D. La. Apr. 22, 2003) (quoting *Landry v. Air Line Pilots Ass'n
Int'l*, 901 F.2d 404, 428 (5th Cir. 1990)).  In addition, with one
exception not applicable here, the plaintiff must allege that he
relied on the allegedly fraudulent representations.  *See
MasterCard*, 313 F.3d at 263 ("[A]lthough reliance is not an
element of statutory mail or wire fraud, we have required its
showing when mail or wire fraud is alleged as a RICO predicate.")
(citing *Summit Props., Inc. v. Hoechst Celanese Corp.*, 214 F.3d
556, 562 (5th Cir. 2000)).

Goldman's complaint and his RICO case statement contain four allegations that can reasonably be construed as attempts to allege the predicate act of mail fraud by Halliburton:  (1) Halliburton's mailing of the Department of Labor Form LS-202, which indicated that Goldman's injury was reported under the LHWCA; (2) Halliburton's mailing of unidentified documents to Pacific, after which Pacific began to pay Goldman LHWCA benefits;[3] (3) Halliburton's mailing of intervention papers in Goldman's state court action stating that it was entitled to reimbursement under the Louisiana workers' compensation statute; and (4) Halliburton's mailing of pleadings in Goldman's action before the Department of Labor asserting that Goldman is a Jones Act seaman.  For the reasons stated below, Goldman's allegations fail to establish the predicate act of mail fraud.

First, with respect to (1) and (2) above, Goldman simply has not alleged a false statement or a misrepresentation.  The very foundation of Goldman's claim is that he is entitled to benefits under the LHWCA and that Halliburton is now falsely claiming that

---

[3]Certain of Goldman's fraud allegations, such as this one, are clearly insufficient to satisfy Rule 9(b), which requires, at a minimum, that a plaintiff allege the time, place and content of allegedly false statements.  *See Williams*, 112 F.3d at 179.  Because, even assuming that Goldman's allegations are pleaded with sufficient particularity, the Court finds that Goldman has not alleged a pattern of racketeering activity, the Court does not separately consider his allegations under Rule 9(b).

he is a Jones Act seaman.  Accepting this premise, Halliburton's alleged statements that Goldman was covered under the LHWCA would be true, and the Court cannot therefore conceive of how they could support a claim for fraud.  Thus, Goldman cannot establish that those representations were part of an alleged scheme to defraud.  *See MasterCard*, 313 F.3d at 263 (no false statement alleged when "the Defendants could not have fraudulently represented the Plaintiffs' . . . debt as legal because it was, in fact, legal").

Second, Goldman has wholly failed to allege that he was injured as a result of statements (1), (2) or (3).  Again, as Goldman's claims are grounded in the theory that he is, in fact, entitled to benefits under the LHWCA, he could not have suffered any injury as a result of statements by Halliburton that his claim should be handled under the LHWCA.  Nor is it apparent how Goldman was injured as a result of Halliburton's intervention in his state court action stating that it was entitled to reimbursement under the Louisiana state workers' compensation law.  The closest Goldman comes to alleging injury from any of these statements is the conclusory assertion that they resulted in a savings to Halliburton.  But a savings to Halliburton does not equal an injury to Goldman, and Goldman's complaint is devoid of any allegation that he was injured because of Halliburton's

11

statements that he was covered under the LHWCA or the Louisiana state workers' compensation statute.

Third, with respect to the remaining fraud allegation, that Halliburton falsely represented that Goldman was a Jones Act seaman to the Department of Labor, Goldman has not alleged that he relied on that statement.  Nor can the Court discern how Goldman could have relied on that statement, as he was at that time in an adversarial posture with Halliburton.  Accordingly, that representation also cannot constitute a predicate act of mail fraud to support a RICO claim.  *See MasterCard*, 313 F.3d at 263.  Thus, Goldman has failed to sufficiently allege a single predicate act, let alone multiple predicate acts that could establish a pattern of racketeering activity.  Accordingly, the Court need not consider the remaining RICO pleading requirements, and Goldman's RICO claim must therefore be dismissed.[4]

**III. GOLDMAN'S MOTION FOR SUMMARY JUDGMENT**

Goldman also moves for summary judgment on his claim that Halliburton should be estopped from arguing that Goldman is a

---

[4]In his opposition brief, Goldman makes additional assertions relating to allegedly improper conduct by Halliburton in connection with government contracts in Iraq.  Such belated and unrelated allegations do not amount to a pattern of racketeering activity about which Goldman can complain.

12

Jones Act seaman.  In considering this motion, the Court first notes that there is no case before this Court in which Halliburton is currently arguing that Goldman is a Jones Act seaman, so it is unclear, to say the least, what relief the Court could grant Goldman on this motion.  To the extent Goldman is seeking to invoke principles of judicial estoppel, such a claim should be brought before the tribunal in which Goldman seeks to have Halliburton estopped.  Moreover, both Judge Engelhardt and the Department of Labor ALJ have already rejected claims identical to this one on the ground that Goldman did not show that Halliburton had taken clearly inconsistent positions concerning Goldman's status before different tribunals.  There is nothing before this Court that would call those findings into question.  Accordingly, Goldman's motion is denied.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS Halliburton's motion to dismiss and DENIES Goldman's motion for summary judgment.

New Orleans, Louisiana, this __4th__ day of April, 2006.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

13